**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**RONALD J. HUSSEY**                                                                    **PLAINTIFF**

**VERSUS**                                                      **CIVIL ACTION NO. 2:07cv119KS-MTP**

**FIDELITY AND GUARANTY LIFE INSURANCE
COMPANY and OM FINANCIAL LIFE
INSURANCE COMPANY**                                                              **DEFENDANTS**


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Motion for Summary Judgment **[#51]** filed on behalf of the plaintiff and on a Motion for Summary Judgment **[#61]** filed on behalf of the defendants. The court, having reviewed the motions, the briefs of counsel, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the plaintiff's motion should be denied and that the defendants' motion should be granted. The court specifically finds as follows:


**FACTUAL BACKGROUND**

This case involves the nonpayment of benefits arising from what the plaintiff characterizes as a non-medical life insurance policy issued by the defendants upon the life of Jennifer Hussey, the deceased wife of the plaintiff, who died in a single car automobile accident on December 23, 2006.

Jennifer Hussey had made application for life insurance benefits with the defendant Fidelity and Guaranty Life Insurance Company through its agent, Randy

Jackson, on October 27, 2005.  She named her husband, Ronald J. Hussey, the plaintiff in this proceeding, as the beneficiary.  Defendant, Fidelity and Guaranty Life Insurance Company is now owned by Old Mutual Financial Life, also known as OM Financial Life Insurance Company.

After the death of Jennifer, the plaintiff made a claim for benefits under the policy.  Upon receiving the claim, the defendants began an investigation of the claim.  As a result of that investigation, the claim was ultimately denied and the plaintiff filed the instant litigation alleging a bad faith breach of contract.  The plaintiff has amended his claim to include a demand for double indemnity benefits under an Accidental Death and Disability Rider to the policy.

A chronology of events from the date of application for the policy until the untimely death of Jennifer is required in order to analyze the facts of this case.  That chronology begins with the application Jennifer signed on October 27, 2005.  She was thirty-eight years old at the time having been born on November 11, 1966.  The application contained a medical history questionnaire, which included multiple inquiries into Jennifer's medical history, as the proposed insured.  Among other things, and relevant to this case, the questionnaire asked:

> 1. Have you ever been treated for or diagnosed with:
>
> g) hepatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines?

Jennifer answered "No."

The application also had an "Authorization" attached which Jennifer signed that stated:

> I have read the questions and answers on this application. The statements made in this application are: complete; true; and correctly recorded. **I agree that: a copy of this application will form a part of any certificate/policy issued; and that no agent can pass on insurability or modify any certificate issued by the Insurer. I also agree that, except as provided in this application's Receipt, if issued, no insurance will take effect unless and until both of the following conditions are satisfied during each proposed insured's lifetime and while each proposed insured's health is as stated in this application: (1) this certificate/policy is delivered to and accepted by the Owner; and (2) the full initial premium for the mode of payment chosen is paid at our Home Office**.

On November 10, 2005, the defendants issued Term Life Policy No. L0546903 with a Policy Issue Date of November 10, 2005.  The Policy gave Jennifer twenty days after delivery to review the Policy and decline the Policy by returning the certificate:

> RIGHT TO CANCEL. If you decide not to keep this certificate, return it within 20 days after you receive it. It may be returned to any of our agents or it may be mailed to us. The return of this certificate will void it from the beginning. Any premium paid will be refunded. We will make any refund within 10 days of our receipt of this certificate.

On November 14, 2005, Jennifer Hussey visited a local doctor, Pamela Miller, and was diagnosed with having bronchitis.  Jennifer also indicated to Dr. Miller that she did not have a regular physician and that it had been a long time since she had undergone a physical examination.  She also told Dr. Miller that she had engaged in some risky behavior as a teenager into her early twenties including IV drug use.  It is unknown whether Jennifer requested or the doctor concluded that Jennifer needed a hepatitis screening.  Regardless, the records indicate that a hepatitis screen was ordered by the doctor from a fasting blood test.

On or about November 23, 2005, the defendants mailed the policy involved in this proceeding to agent Randy Jackson to be delivered without restrictions.  On

November 28, 2005, Jennifer Hussey returned to the doctor's office after fasting for the recommended blood test.  On November 29, 2005, a laboratory in Lenexa, Kansas, received the blood sample from Jennifer and on November 30, reported that Jennifer Hussey had tested positive for Hepatitis C.  It is not shown definitively from the records when this information was transmitted to Dr. Miller.  The doctor's notes indicate that it was possibly received on December 2 and that Jennifer was called.  However, this has not been confirmed by any evidence the court has reviewed and is not determinative of the outcome.

On December 2, 2005, the policy was mailed by the writing agent, Randy Jackson, to Jennifer Hussey via Certified Mail, Return Receipt Requested.  On December 8, 2005, Jennifer returned for an office visit with Dr. Miller who informed her that she her blood test indicated that she was  positive for Hepatitis C.  The records of the doctor indicate "Patient is a little overwhelmed . . .."

On December 23, 2006, Jennifer Hussey was killed in a single car automobile accident on U.S. Highway 11 in Forrest County, Mississippi.   Shortly before her death, Jennifer had been consuming alcoholic beverages at a Chili's Restaurant in Hattiesburg.  She left the Chilli's and traveled approximately nine miles toward her home in Petal when her car left the roadway striking a utility pole guy wire, causing her to be ejected from the car and resulting in her death.  Her blood alcohol level was determined to be .277%.

The plaintiff filed a claim for life insurance benefits which was denied on April 2, 2007, by Pamela Sheets, a Senior Claims Examiner for OM Financial Life Insurance Company.  The denial letter indicated that the defendants had conducted a routine

contestable claim investigation since the policy had been in force less than two years, and had assessed the medical history presented on Hussey's application for insurance as part of that process.  Citing policy application language, Sheets maintained that Jennifer agreed that no insurance would take affect unless <u>and</u> until delivery and acceptance of the Policy were accomplished during her lifetime, and while her health was as stated in the application.  Sheets stated that because of Jennifer's medical treatment history of November 14, 2005, and her positive diagnosis of Hepatitis C on November 30, 2005, that she, Jennifer, had made material misrepresentations to obtain the policy.  This defense has now been dropped as there is no evidence of misrepresentation by Jennifer in procuring the subject policy.

On May 9, 2007, the plaintiff, Ronald J. Hussey, brought this action by filing a complaint against the defendants in the Circuit Court of Forrest County, Mississippi. The defendants removed the action to this court on June 12, 2007.  The plaintiff's Complaint alleges that the actions of OM  Financial constitute a breach of contract, bad faith denial of benefits, intentional and/or negligent infliction of emotional distress, and post-claim underwriting.  The plaintiff has demanded relief which includes compensatory damages, actual damages, attorneys' fees, litigation expenses, damages for anxiety, worry, mental anguish and emotional distress, punitive damages, and declaratory judgment.  On February 5, 2008, the plaintiff amended his Complaint asserting essentially the same causes of action but also seeking accidental death benefits in addition to term life benefits.

Discovery has been completed and both parties have moved for summary judgment.  The matter is now ripe for consideration.

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d

265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v.*

*National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'"  *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **ANALYSIS**

This case hinges upon when the policy was delivered and accepted by Jennifer and whether her health was "as stated" in the application when those events occurred.  The plaintiff contends that the policy was delivered while Jennifer was in "good health."  However, "good health" is not the standard.  There are voluminous cases cited that judge whether a person is in "good health" upon delivery of an insurance policy.  These cases remain good law for that proposition.  However, that is not the provision of the

application the defendants are relying on. Instead, they assert that the application language which governs this case is that cited above from the "Authorization" signed by Jennifer as part of the application process. That language requires that Jennifer's health be "as stated" in the application upon delivery and acceptance of the policy. They contend that this is a condition precedent which was not fulfilled thus creating a situation where the Policy never went into effect.

It is hornbook law that in Mississippi "the insurance contract determines the rights of the parties unless the contractual provisions are contrary to public policy." *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238 241 (5th Cir 1990)(citing *Cauthen v. National Bankers Life Ins. Co.*, 228 Miss. 411, 88 So.2d 103, 104 (1956)). Additionally, "insurers may place conditions precedent upon the application process . . .." *Id*. (Citing *Estate of Fishel v. Guardian Life Ins. Co.*, 781 F.2d 901 (5th Cir.1986) (unpublished), slip op. at 7.). Thus, under the facts of this case, the conditional insuring agreement created by acceptance of the application does not operate to create coverage until the conditions set forth in the application are met. *See id.* In this case, that requires delivery and acceptance of the policy while Jennifer's health was "as stated" in the Application.

As to delivery, the defendants argue that such could certainly not have occurred prior to December 3, 2005, since agent Jackson placed the policy in the mail, Certified, Return Receipt Requested, on December 2. The defendants do not contest that the delivery instructions permitted Jackson to mail the policy. However, they do assert that the delivery instructions prevented delivery of the policy until Jackson complied therewith and confirmed that the proposed insured had not been to see a physician or

that her health had otherwise changed in the interim between application and delivery. There is no evidence in the record that Jackson complied with these requirements. The parities indicate that Jackson is "not available" and, of course, Jennifer is deceased. There is no record of the certified mail return receipt nor of any communication between Jackson and Jennifer. This notwithstanding, the court agrees that delivery could not have occurred prior to December 3, 2005, regardless or whether Jackson complied with the delivery instructions of the defendant.

Further, the plaintiff's argument that the Policy was "constructively delivered" when it was sent to agent Jackson is not persuasive. The agent was permitted to mail the Policy as the method of delivery, but he nevertheless was required to make sure there was no post-application change in the insurability of the proposed insured as stated above. It required him to inquire as to whether there had been a change in insurability and required him to inquire as to whether the proposed insured had consulted or been treated by any physician or practitioner since the application for insurance was originally made. Jackson was prohibited from delivering the Policy unless "the insured's health remains exactly as stated in the application."

Constructive delivery by delivering the policy to the agent for delivery to the insured does not operate as a contract completion where an unfulfilled condition is attached to the delivery. COUCH ON INSURANCE 3D, ' 14:11 (2005). This is particularly true when the insured is entitled for a period of time to inspect the policy before accepting it, as is the case here. "Similarly, where the insured is entitled to inspect the policy before accepting it, the mailing of a policy to the insured does not constitute a delivery completing the formation of the contract." COUCH ON

INSURANCE, 3d. § 14:13, p. 14-21 (citing *Commonwealth Life Ins. Co. v. Cooper*, 172 So. 314 (Miss. 1937)).

However, the defendants' corollary argument that Jennifer had twenty days to reject the policy and thus that delivery could not have occurred until December 23 is equally without merit.  It is obvious that the policy was not rejected because the premiums were paid for a full year prior to Jennifer's death.  A requirement that a policy be accepted by an insured before it becomes effective can prevent a constructive acceptance by an agent who mails the policy, but it cannot increase the effective date of the policy beyond the date of delivery where, in retrospect, the policy was not rejected.  The defendants have cited no case which convinces the court that the rejection period should be included in a determination of when Jennifer accepted the policy.  It is obvious that she accepted it when it was delivered.

The defendants concede that there is no proof in the record that Jennifer knew she had Hepatitis C prior to her visit to Dr. Miller on December 8, 2005.  They do attempt to intimate that she knew something was wrong and rely on irrelevant and unsupported speculation to insinuate that she was possibly aware of health problems.  The plaintiff, however, asserts the lack of diagnosis or treatment of Jennifer for the Hepatitis C until she was informed of it on December 8 to support his argument that delivery of the policy occurred prior thereto.

It is true that Jennifer had not been informed of the diagnosis of Hepatitis C nor had she been treated for the disease prior to that date.  However, the Application merely states that the proposed insured's health must be "as stated" in the application at the time of delivery for the insurance to go into force.  It makes no reference to the

proposed insured's state of mind and whether or not she knew of the change in her health.  The Application only asks whether she had been diagnosed <u>or</u> treated for Hepatitis C.

Based on the foregoing, the defendants argue that whether the proposed insured's health is "as stated" in the Application upon delivery of the policy is to be determined objectively.  To support this argument, they cite *Fidelity and Guar. Life Ins. Co. v. Williams*, 2008 WL 336605 (S.D. Miss. Feb.1, 2008) and *Fidelity and Guaranty Life Insurance Co. v. Payne*, 2003 WL 22143249 (N.D.Ill. Sept.16, 2003).

In reviewing contract language identical to that in question here, both of these cases recognized that it is irrelevant whether the proposed insured knew of an untoward change in health prior to delivery of the policy.  Merely the fact that the proposed insureds had been diagnosed with a malady that changed their health from that which was stated in the application was sufficient to prevent the fulfillment of the condition precedent identical to the one at issue here.  The court agrees that the language of the Application in this case requires that the change in health be viewed objectively.  The plaintiff has not cited any authority which convinces the court otherwise.

Viewed objectively, it is irrelevant whether Jennifer knew she had Hepatitis C or not until December 8.  The lab results reported on November 30 confirmed the presence of the disease.  This is a sufficient diagnosis under the language of the Application to confirm a change in Jennifer's health from that stated in the Application.  That being so, and with delivery and acceptance occurring no earlier than December 3, the Policy never went into effect.  Further, such a finding obviates the necessity of

deciding any issues related to the Accidental Death and Disability Rider.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#51]** filed on behalf of the plaintiff is Denied and the Motion for Summary Judgment **[#61]** filed on behalf of the defendants is Granted and this matter is dismissed with prejudice.  Any other pending motions are denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 11th day of June, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE